174 So. 753

**THOMAS v. REYNOLDS.**

**3 Div. 211.**

Supreme Court of Alabama.

May 27, 1937.

J. Render Thomas, Jr., of Montgomery, for appellant.

Rushton, Crenshaw & Rushton, of Montgomery, for appellee.

THOMAS, Justice.

The administration of the estate was duly moved into a court of equity and construction of a will is sought by the executrix under such instrument.

The bill is aided by the exhibit thereto. Grimsley v. First Ave. C. & L. Co., 217 Ala. 159, 115 So. 90.

The salient facts averred are thus stated by the pleader:

"* * * that there were three children born to the said Gibson Reynolds, deceased, and your oratrix, viz., Gibson Reynolds, Jr., born May 1, 1924; Olive Stewart Reynolds, born November 28, 1927, and Elizabeth Reynolds, born January 3, 1936. That at the time of the execution of his said last will and testament by said Gibson Reynolds, on, to-wit, the 24th day of October, 1935, he was aware of the fact that a child would shortly be born to your oratrix. That said Gibson Reynolds was a physician who had actively practiced his profession in Montgomery County for over thirty years.

"3. Oratrix shows unto the Court that by the terms of said last will and testament of said Gibson Reynolds, deceased, all of his property is devised and bequeathed to your oratrix, and by Article IX of said will oratrix was appointed sole executrix of same, to serve without bond, and by said Item IX the said testator provided as follows:

"'I have made no provision for my children for the reason that I have confidence in my wife and I feel that she will deal justly with them and provide suitably for them.'

"Oratrix is advised and believes and upon such advice and belief avers and shows unto the Court that under the statutes of the State of Alabama, and more especially section 10585 of the Code of 1923, where a testator has a child born after the making of his will and no provision is made in the will in any way for such contingency, such birth operates as a revocation of the will so far as to allow such child to take the same share of the estate of the testator as if he had died intestate. Oratrix is further advised and believes and upon such advice and belief avers and shows unto the Court that the said provisions of the last will and testament of her said testator, and more especially the provisions of said Item IX thereof, show the intention of said testator to

214

provide for the said Elizabeth Reynolds, who was shortly to be born."

The guardian for the after-born child answered saying:

"Respondent further avers and alleges that the said Gibson Reynolds executed said will, on to-wit, the 24th day of October, 1935, and that she was not born until, to-wit, January 3, 1936, and that at the time of her birth the testator, her father, the said Gibson Reynolds, was still living, and no provision was made in his said will in any way for the contingency of a child being born to him and his wife after the execution of his said last will and testament; and respondent avers and alleges that her birth operated as a revocation of her said father's will so far as to allow her to take the same share of the estate of the testator as if her father had died intestate.

"Respondent further avers and alleges that said will of her father, Gibson Reynolds, was executed on, to-wit, October 24, 1935; and that respondent was born, the child of said Gibson Reynolds and the complainant, Ethel S. Reynolds, on, towit, January 3, 1936, which was after the execution of her father's said will, and that in said will of her father no beneficial provision for said respondent was made by her father nor did he disinherit her altogether in clear and unmistakable terms, and that under the law and statutes of the State of Alabama, and more especially Section 10585 of the Code of Alabama of 1923, said will was revoked by respondent's birth so far as to allow her to take the same share of the Estate of her father, the testator, as if her father had died intestate."

The executrix as a witness gave the names and ages of her children, all of whom were born before the death of testator on March 13, 1937; that testator was a practicing physician on October 24, 1935, when the will was made, and at such time he knew that another child would shortly be born as the result of their marriage, and which duly eventuated to his knowledge.

The trial court rendered decree, saying: " * * * upon consideration of the testimony, which was taken orally before the Court, is of the opinion that the testator, Dr. Gibson Reynolds, who is shown by the evidence to have been a practicing physician of over thirty years' experience, was well aware, at the time he executed his last will and testament, on October 24, 1935, that another child would be born to him and his wife within a few weeks; and the Court is further of the opinion that, under the provision of the last sentence of Item IX of said will, viz.: 'I have made no provision for my children for the reason that I have confidence in my wife and I feel that she will deal justly with them and provide suitably for them', the testator had in mind and intended to exclude from the provisions of the will the unborn child as well as the two children then living at the time of the making of said will."

The pertinent provisions of the statute, to which reference is made in respective pleadings, are:

"Whenever a testator has a child, born after the making of his will, either in his lifetime or after his death, and no provision is made in the will in any way for such contingency, such birth operates as a revocation of the will, so far as to allow such child to take the same share of the estate of the testator as if he had died intestate." Code, § 10585.

The rule of the common law only protected a subsequent marriage and birth of issue; the birth of issue alone had no effect upon and such issue was cut off by will as to property so devised. Doe v. Lancashire, 3 Durn. & E. 24, 5 Term R. 48. It was to meet this inconsistency that the statute was incorporated into our several codes. Woodliff v. Dunlap, 187 Ala. 255, 65 So. 936.

The subject-matter is dealt with by Mr. Freeman in his note to Wilson v. Fosket, 6 Metc. (Mass.) 400, 39 Am.Dec. 736, 740, 741. The authorities collected by that eminent editor of law reports are to the effect:

"In very many of the states and territories statutes have been passed similar to that of Massachusetts, providing that when any testator omits in his will to provide for any of his children, or for the issue of any deceased child, such child or issue shall take the same share to which it would have been entitled if the decedent had died intestate, unless it shall appear that such omission was intentional and not by mistake or accident: California, Civ.Code, sec. 1307; Dakota, Rev.Code (1877), 2d ed., p. 315, sec. 715; Michigan, 2 Comp. L. (1871), p. 1375; Maine, R.S. (1871), p. 564; Minnesota, Statutes (1878), p. 570; Nebraska, Gen.Stat. (1873), p. 304; Nevada, 1 Comp.L. (1873), p. 201; Utah,

Comp.L. (1876), p. 272; Vermont, Gen. Stat. (1862), p. 380. In Missouri, New Hampshire, and Oregon similar provision is made for children and the issue of deceased children, living at the making of the will or born afterwards, and not 'named' or referred to or provided for in the will: Guitar v. Gordon, 17 Mo. 408; McCourtney v. Mathes, 47 Mo. 533; Pounds v. Dale, 48 Mo. 270; Wetherall v. Harris, 51 Mo. 65; Gage v. Gage, 29 N.H. 533; Gen.Stat. of N. H. (1878), p. 455; Gerrish v. Gerrish, 8 Or. 351 [34 Am.Rep. 585]; Gen.L. of Oregon (1872), pp. 788, 789. And the settled construction of the Missouri statute, and also of the Oregon statute, copied from it, is that it applies only to children or issue unintentionally omitted from the will: * * *

"It is clear that the principle upon which all statutes providing for pretermitted children are based, is that the pretermission was unintentional, although it may not be expressly so stated in the statute. To say that a testator may dispose of his estate by a will duly executed, and yet that he may not disinherit any of his heirs, even though he indicates a clear intention to do so, would be absurd. The only question, therefore, that can properly arise upon the construction of the various statutes on this subject is as to what shall be deemed competent and sufficient evidence of an intentional exclusion of heirs not provided for in the will. The statute may be so framed as to admit evidence of that intention dehors the will, or it may make the will itself conclusive on that point."

Thus the reason for the rule, as expressed by Mr. Freeman, is in accord with the right and freedom of testamentary disposition, and the dictates of natural affection and the expression thereof, or with impelling reason for a testator to act to the contrary.

The subject and statute was considered in Woodliff et al. v. Dunlap, 187 Ala. 255, 65 So. 936, 937, and the common-law rule was stated, as follows:

"'Upon whatever grounds this rule of revocation may be supposed to stand, it is on all hands allowed to apply (and upon this subject particularly after what was said by Lord Mansfield in Brady v. Cubit, Dougl. 39) only in cases where the wife and children, the new objects of bounty, are wholly unprovided for, and where there is an entire disposition of the whole estate to their exclusion and prejudice. This, however, cannot be said to be the case where the same persons who, after the making of the will, stand in the relation of wife and children, were specifically contemplated and provided for by the testator, though under a different character and denomination.' Kenebit v. Schrafton and others, 2 East's Rep. 530; Hollway v. Clarke, 1 Phill.Rep. 339."

And the opinion concludes, as follows:

"As there are after-born children not provided for in the will, and as the will does not show that the testator did not intend for such after-born children to participate in his estate, section 6160 of the Code of 1907, in connection with which this will must be construed, requires that the executrix shall account to such children in the way in which she would have been required to account to them if her husband had died intestate. In other words, taking into consideration the history of the law on this particular subject to which our attention is addressed, and the reasons which actuated the Legislature in enacting what is now section 6160 of the Code (see Shackelford et al. v. Washburn et al. 180 Ala. 168, 60 So. 318, 43 L.R.A.(N.S.) 1195), we are of the opinion that said section has had no effect upon the power of sale which, in the third paragraph of the will, is conferred upon the executrix."

■ It is established in this jurisdiction that where the language of a testamentary instrument is perfectly clear and unambiguous, there is no field for construction, and the court will ascertain the intent from the instrument alone. If subject to construction, a court may ascertain the true intent and meaning of the testator by putting itself as far as possible or may be, in the place of the testator so circumstanced and reading all the provisions of the will in the light of the environment of such testator at the time he executed the will. Fowlkes v. Clay, 205 Ala. 523, 88 So. 651; 26 R.C.L. p. 1252; First Nat. Bank v. Sheehan, 220 Ala. 524, 527, 126 So. 409.

Here the testator intentionally omitted his children in life with a full knowledge of the condition of the wife and the child thereafter born to his marriage.

In the case of Ensley v. Hodgson, 212 Ala. 526, 103 So. 465, this court construed a will contemplating the birth of a child en ventre sa mere. The terms of the will

and the facts in the case are different from those in the case at bar, but the reasoning of the court in that case sustains the construction of Reynold's will placed upon it by the learned court below.

 When all the provisions of the will are considered, devising and bequeathing testator's several classes of property (real, personal, and mixed) to his wife, it will be noted that testator, added .the residuary clause of like tenor—in legal effect—the last clause of his will. First Nat. Bank of Mobile v. Hartwell, 232 Ala. 413, 168 So. 446; Ralls et al. v. Johnson et al., 200 Ala. 178, 75 So. 926. The two clauses following the residuary clause contained only precatory expressions as to his wife and as affecting their children. In no sense can the same be taken as a devise or bequest to any child or children. The intention is to exclude that class from the will. The meaning of precatory words is well understood. Words of entreaty request, desire, wish, or recommendation employed in wills are distinguished from direct and imperative terms. 1 Williams On Executors, 88 and 89 and note; Black Law Dic. 926; 69 C.J. 78, § 1132 and notes. Such were the words and terms employed by testator as affecting his children in the paragraphs succeeding the other clauses and the residuary clause. That is to say, the preceding clauses had disposed of all of testator's property to· his wife, and were a specific and unambiguous exclusion of his children from any title, immediate, or as reversioner, or in remainder, to any of his properties.

 It will be observed that the statute does not say if no provision is made for such after-born child, but does say no provision is made for such contingency; for its application is dependent upon the fact of the failure of the will to provide for such "contingency,"· and the statute does not provide specifically for such after-born child. Thus the case is not within the provisions of the statute as construed by courts of last resort in this and other jurisdictions.

The ruling of the trial court was within the reason of the rule and our construction of the statute. We are of the opinion that the decree of the circuit court is without error, and it is, therefore, affirmed.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.