**FIRST NATIONAL BANK OF MONT-GOMERY, Executor of the Estate of Georgia S. Gossler, Deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 1409–N.**

United States District Court
M. D. Alabama, N. D.
Aug. 28, 1959.

William S. Duke and Robert D. Thorington, Montgomery, Ala., for plaintiff.

Charles K. Rice, Asst. Atty. Gen., James P. Garland, David A. Wilson, Jr., Washington, D. C., George T. Qualley, Arlington, Va., Attorneys, Department of Justice, Hartwell Davis, U. S. Atty., and Paul L. Millirons, Asst. U. S. Atty., Montgomery, Ala., for defendant.

JOHNSON, District Judge.

This cause is now submitted upon the complaint, answer, plaintiff's request for admissions and defendant's response thereto, the stipulation of the parties, with the exhibits thereto, said stipulation having been filed herein on April 9, 1959, the order of this Court made and entered on April 10, 1959, pursuant to said stipulation of the parties, and the written briefs of said parties. Upon this submission, this Court now proceeds to make and file this memorandum opinion, embodying herein the appropriate findings of fact and conclusions of law.

This action, brought by The First National Bank of Montgomery, as executor of the estate of Georgia S. Gossler, deceased, against the United States of America, seeks recovery of $141,086.17, with interest from April 9, 1957. The basis of plaintiff's action is that plaintiff erroneously paid to defendant said amount on a deficiency that had been determined by the defendant as estate tax due on the estate of Georgia S. Gossler, deceased. An intelligent understanding

of the issues involved requires a detailed statement of the facts. William C. Oates, a resident of Montgomery, Alabama, died on February 6, 1938, testate. His will was dated August 16, 1918, and was admitted to probate in Montgomery County, Alabama, February 23, 1938. At the time of the execution of his will, William C. Oates had no children. He was then married to Georgia S. Oates. A daughter, Marion Oates, now Marion Oates Leiter, was born to this union on September 29, 1919. The marriage was dissolved on January 14, 1938, by divorce. Upon the death of William C. Oates, Georgia S. Gossler filed her petition for the probate of his will. Marion Oates, now Marion Oates Leiter, the only child, was then nineteen years of age and, as authorized by the Alabama law, had her disabilities of non-age removed; whereupon she then executed an acceptance of service of Georgia S. Gossler's petition for the probate of the will, and consented that said will be admitted to probate. No estate tax return was ever filed by Georgia S. Oates Gossler as executrix of the estate of William C. Oates; nor did she ever at any time make any statement, either partial or final, of said estate. Georgia S. Oates married Philip G. Gossler on the 12th day of March, 1938, and remained Georgia S. Oates Gossler until she died on March 16, 1953, testate. Her will was admitted to probate in Montgomery County, Alabama, and under the terms of said will, the daughter, Marion Oates Leiter, and The First National Bank of Montgomery, the plaintiff here, were named as joint executors. Insofar as this litigation is concerned, Marion Oates Leiter was the sole beneficiary under this will. Upon the 18th day of January, 1954, Marion Oates Leiter resigned as an executor of the will of Georgia S. Oates Gossler. Subsequent to her resignation, The First National Bank of Montgomery, as the other executor of said will, filed in the Circuit Court of Montgomery County, Alabama, a statement for final settlement of the estate of William C. Oates. In said petition for final settlement, made pursuant to the provisions of an Alabama statute [1] the bank alleged that Marion Oates Leiter was claiming as the next of kin and sole heir at law of William C. Oates the title and right of distribution to all of the estate of William C. Oates and because of said claim the bank requested the Circuit Court of Montgomery County, Alabama, to pass upon and determine the validity of the claim of Marion Oates Leiter to said estate of William C. Oates as opposed to the right of the estate of Georgia S. Oates Gossler.

To said petition of the bank, as executor of the estate of Georgia S. Oates Gossler, Marion Oates Leiter filed her answer and claim. Said claim was based upon two propositions:

(1) Item Sixth of the Will of William C. Oates left such property to his wife, Georgia S. Oates, and Georgia S. Oates renounced her inheritance under such Will clearly, continuously and unquestionably.

(2) Item Seventh of the Will of William C. Oates made no provision for Marion Oates Leiter, a child born after the making of said Will, and Marion Oates Leiter therefore took as a child as though her father, William C. Oates, had died intestate.

Upon the issues thus made and the testimony submitted thereon, the Circuit

1. Section 320, Title 61, Code of Alabama. "*Settlement after representative's death, removal or resignation.*—When an executor or administrator dies, resigns, or is removed, or his letters are revoked, or his authority ceases from any cause, he must within one month after his authority ceases, or, in case of his death, his personal representative must, or in case of his removal from the state, his sureties must, within six months after the grant of letters, file his accounts, vouchers, and statement of heirs and legatees for and must make final settlement of the administration of, such executor or administrator; of which settlement notice must be given in the same manner, and such settlement must be conducted and governed, except as herein otherwise provided, by the same rules and provisions of law, as other final settlements by executors or administrators."

Court of Montgomery County, Alabama, on the 5th day of August, 1954, ordered:

"1. That the Will of William C. Oates dated August 16, 1918, and admitted to probate and record in the office of the Judge of Probate of Montgomery County, Alabama, on February 23, 1938, and of record in Will Book 13, at Page 192, in said Probate Office of Montgomery County, Alabama, be and the same is hereby declared to have been valid and binding.

"2. That Georgia Saffold Oates Gossler be and she is hereby declared to have renounced any and all of her inheritance under said Will.

"3. That Marion Oates Leiter be and she is hereby declared as the sole heir of William C. Oates, deceased.

"4. That Marion Oates Leiter as sole heir of William C. Oates, deceased, be and she is hereby entitled to all of the undistributed residue and remainder of the Estate of William C. Oates, deceased."

and further ordered the bank, as the executor of the estate of Georgia S. Oates Gossler, to make distribution of the assets of said estate to Marion Oates Leiter; in due course said distribution was made. It is significant to note that Marion Oates Leiter was the ultimate beneficiary of the estate of William C. Oates and also of the estate of Georgia S. Oates Gossler, regardless of the court proceeding and/or the outcome thereof in the Circuit Court of Montgomery County, Alabama.

On June 14, 1954, The First National Bank of Montgomery, as executor of the estate of Georgia S. Oates Gossler, filed a Federal estate tax return reporting a total gross estate of $607,228.08 and showing a net estate tax payable of $133,576.92, which amount was tendered with the return. There was deleted from said return the value of certain shares of stock in The First National Bank of Montgomery, Alabama, and the value of certain real property situate in Hale County, Texas, and Houston County, Alabama, for the reason that Marion Oates Leiter had filed a claim to ownership of such property as the legal heir of William C. Oates and such claim was then pending. Subsequently, on October 21, 1954, the bank, as executor of the estate of Georgia S. Oates Gossler, filed claims for refund for the years 1950 through 1953 in the total amount of $30,975.01, said claims for refund being upon the theory that said sums had been improperly included in the individual income tax returns of Georgia S. Oates Gossler for those years and that such items were not the income of Georgia S. Oates Gossler according to the decree of the Circuit Court of Montgomery County, Alabama. This collective claim for refund was granted. The deficiency forming the basis for this litigation was upon the determination of the Commissioner of Internal Revenue that the aforementioned shares in The First National Bank of Montgomery and the real property situate in Hale County, Texas, and Houston County, Alabama, that had been devised by William C. Oates to Georgia S. Oates (Gossler) was properly includable in the estate of Georgia S. Oates Gossler, who was named as the sole beneficiary in his will. The claim for refund was denied by the Commissioner on October 31, 1957, and this litigation ensued.

The issues now presented are:

(1) Plaintiff's claim that defendant is estopped to deny the validity and binding effect of the decree of the Circuit Court of Montgomery County, Alabama, dated August 5, 1954.

(2) Plaintiff's claim that the decree of the Circuit Court of Montgomery County, Alabama, dated August 5, 1954, is binding and controlling in this case.

(3) The claim of the plaintiff that Marion Oates Leiter inherited the property in question under the provisions of the will of her father, William C. Oates, and that said property is not properly includable in the estate of Georgia S. Gossler for Federal estate tax purposes.

With respect to plaintiff's claim that the defendant is estopped to deny

the binding effect of the decree of the Circuit Court of Montgomery County, Alabama, said decree being dated August 5, 1954, we must start with the proposition that there is a legal presumption to the effect that defendant is not so estopped in such cases and the burden to prove equitable estoppel is upon the plaintiff. See Girard v. Gill, 4 Cir., 1958, 261 F.2d 695, and May Broadcasting Co. v. United States, 8 Cir., 1953, 200 F.2d 852. And also it must be kept in mind that such a doctrine is to be applied only with caution against the United States in cases such as this one. Vestal v. Commissioner, 80 U.S.App.D.C. 264, 152 F.2d 132; Estate of Guenzel v. Commissioner, 8 Cir., 1958, 258 F.2d 248; and L. Loewy & Son v. Commissioner, 2 Cir., 1929, 31 F.2d 652.

■■ Under the settled law, equitable estoppel, such as plaintiff seeks to have invoked in this case, must be predicated upon the conduct, language, or the silence of the party against whom it is sought to be invoked. Said conduct, language, or silence must amount to the representation or concealment of a material fact or facts. The representation must be as to fact or facts and not as to law. The theory upon which plaintiff seeks to have the doctrine of equitable estoppel invoked in this case is that the defendant, acting through the Internal Revenue Service, upon examining the fiduciary income tax returns filed by the plaintiff-bank for the estate of William C. Oates, upon which returns there was reported income from the property in question, accepted the tax due thereon and that the defendant, acting through the Internal Revenue Service, granted a claim for refund to the estate of Georgia S. Gossler for income taxes previously paid on the income from such property. As was stated by the Supreme Court of the United States in Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 77 S.Ct. 707, 709, 1 L.Ed.2d 746:

> "This argument is without merit. The doctrine of equitable estoppel is not a bar to the correction by the Commissioner of a mistake of law."

As to the "fact" that William C. Oates' tax return was accepted, such acceptance does not authorize the invocation of the principle of equitable estoppel against the Government. See Bird v. United States, 1 Cir., 1957, 241 F.2d 516. The granting of a refund has the same effect. See Burnet v. Porter, 283 U.S. 230, 51 S.Ct. 416, 75 L.Ed. 996, and Emery v. Commissioner, 1 Cir., 1935, 78 F.2d 437.

■ Because plaintiff's theory of equitable estoppel fails at the outset, it is not necessary to go into any great detail concerning the other elements of estoppel. However, it is considered appropriate by the Court to observe that the element requiring the truth of the alleged representations to be unknown to the party claiming the benefit of estoppel is also missing. The plaintiff-bank knew the truth; it was not misled in any way or to any extent. There was no lack of knowledge on its part of any of the circumstances that were or may have been known to the defendant. Another essential element of estoppel is that the representations of fact that are alleged to have been made by the party against whom the doctrine of estoppel is to operate must be made with the expectation that said representations of fact would be acted upon by the parties seeking to invoke such doctrine. Needless to say, the bank did not act because of any representations made by representatives of the defendant. Thus, this Court concludes that there is no basis for applying the doctrine of equitable estoppel against the defendant, the United States of America, in this case.

Plaintiff's contention that the decree of the Circuit Court of Montgomery County, Alabama, dated August 5, 1954, which decree declared that Georgia S. Oates Gossler had renounced any inheritance under the will of William C. Oates and that Marion Oates Leiter was the sole heir of William C. Oates and as sole heir was entitled to all of the undistributed assets of the estate of William C. Oates, was a determination of the ownership of the properties involved, and, because of that, is binding in this case, is

met by the contention of the defendant that said decree was obtained in a non-adversary proceeding or was obtained by consent or collusion among the parties and, therefore, is not binding upon the defendant in this case.

In connection with this issue, this Court finds that for approximately seventeen years after the death of William C. Oates, Georgia S. Oates Gossler acted as the executrix and sole beneficiary of the estate of William C. Oates. During the period from the death of William C. Oates to her own death on March 16, 1953, Georgia S. Oates Gossler took sole possession of all of the estate's property, mingled that property with her own, paid off the estate's debts, collected the income from the estate's property, and reported it as her own income on her Federal income tax returns. For approximately sixteen years, Marion Oates Leiter made no objection to the fact that her mother, Georgia S. Oates Gossler, was claiming the sole title and right to the entire estate of her father, William C. Oates. During this entire period, she

was of age and legally competent. The theory that Georgia S. Oates Gossler renounced all inheritance under the will of William C. Oates is based primarily upon a notation written upon a non-probated copy of the will, as follows:

"I do not see legally how I G.S. O.G. as wife am entitled to inherit anything above set forth in this will. I was not his wife at the time of his death. March 13, 1949. G. S.G."

It is accepted as true that Georgia S. Oates Gossler wrote those words on the non-probated copy of the will at or about the date of March 13, 1949. With reference to the contention of the defendant that the court proceedings were of a nonadversary nature and obtained by consent or legal collusion, this Court finds that the statements made to the Circuit Court by the attorneys representing the parties in that litigation do much to reflect that the contention of the Government is correct.[2] The statements in those briefs shed considerable light on the nature of the proceedings and lead

2. On the first page of the memorandum brief of Marion Oates Leiter there is found the following: "In no event can anyone receive any part of said estate except Marion Oates Leiter. The only question involved is whether Marion Oates Leiter received the property 'as his only heir at law and next of kin' of William C. Oates or as the sole devisee of Georgia S. Oates Gossler. It is recognized by all parties that if Marion Oates Leiter received such property from William C. Oates, the estate tax thereon is less than if she receives said property from the Estate of Georgia S. Oates Gossler. There are no other principles or rights involved."

In the brief filed by the bank in this case, there is written the following: "In conclusion, we would like to again make it clear that we are not assuming an adversary position towards the claim of Mrs. Leiter. It is only our desire, and what we conceive to be our duty, to call to the Court's attention the pertinent and applicable authorities, to the end that the Court shall have a well rounded picture of the case and the issues involved. Had we desired to vigorously oppose Mrs. Leiter's claim we should have *insisted* that the Court appoint an

Administrator as Litem, as suggested in the prayer of the petition, to represent the estate of Mrs. Gossler, whose duty it would have been to assume an adversary position and actively oppose her claim. This we did not do. We only ask, and this we do insist upon, that the Court have before it, for its consideration in reaching its decision in this case, a clear and undistorted statement of the facts and a fair and comprehensive list of the pertinent authorities; and, the decree of the Court, upon final adjudication, based upon such foundation, will have our complete acquiscense and enthusiastic compliance."

The bank's brief also stated: "It is, also, true that there will be a substantial tax savings to Mrs. Leiter if the Court can see its way clear under the facts and the law to decree that the Estate of William C. Oates passed directly to his daughter, and that the Will was ineffectual to pass it to Mrs. Gossler. We stated at the hearing, and we now reiterate and emphatically and sincerely declare to the Court, that we hope the Court can find a way to sustain Mrs. Leiter's contentions in this cause. We neither assume nor occupy any adverse position to Mrs. Leiter in the case."

this Court to the conclusion that said proceedings were of a nonadversary nature and did amount to legal collusion insofar as this case is concerned. By the use of the word "collusion," this Court, as stated by the Fifth Circuit Court of Appeals in Saulsbury v. United States, 5 Cir., 199 F.2d 578, at page 580, does not "imply fraudulent or improper conduct, but simply that all interested parties agreed to the order and that it was apparently to their advantage from a tax standpoint to do so. We mean that there was no genuine issue of law or fact as to the right of the beneficiary to receive this income, and no *bona fide* controversy between the trustee and the beneficiary as to the property rights under the trust instrument."

This Court concludes that the proceeding in the Circuit Court of Montgomery County, resulting in the decree of that court dated August 5, 1954, to the effect that Georgia S. Oates Gossler renounced her inheritance under the will of William C. Oates, that Marion Oates Leiter was the sole heir of William C. Oates and was entitled to all of the remaining assets of the estate of William C. Oates, has no legal effect from a Federal estate tax standpoint and is entitled to no weight in this case. See Saulsbury v. United States, supra, wherein the court stated:

"The order of the state court directing that no further payments of income be made to appellant until said loan was paid, we think, is not entitled to any weight, since it did not determine the rights of the parties under the trust instrument. Moreover, it does not affirmatively appear that said order was obtained in an adversary proceeding and that there was no collusion. By the word *collusion*, we do not mean to imply fraudulent or improper conduct, but simply that all interested parties agreed to the order and that it was apparently to their advantage from a tax standpoint to do so. We mean that there was no genuine issue of law or fact as to the right of the beneficiary to receive this income,

and no *bona fide* controversy between the trustee and the beneficiary as to property rights under the trust instrument."

As has been stated by this Court above, Marion Oates Leiter was the owner of the property prior to the State court proceeding. She received no greater ownership in any of the property involved in this litigation by reason thereof. For that reason, the plaintiff's argument based upon Gallagher v. Smith, 3 Cir., 1955, 223 F.2d 218, is inapplicable in this case. This Court, in arriving at this conclusion, recognizes the law enunciated by the Supreme Court of the United States in Freuler v. Helvering, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634, and in Commissioner of Internal Revenue v. Blair, 7 Cir., 1936, 83 F.2d 655, reversed, Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465. It is the judgment of this Court that the Freuler v. Helvering and the Blair v. Commissioner cases do not have any application where a state court makes a determination under the circumstances surrounding and such as were involved in the Circuit Court case in question. See Stallworth v. Commissioner, 5 Cir., 1958, 260 F.2d 760, 763, wherein Judge Jones, speaking for the Fifth Circuit, stated: "If the Alabama suit was nonadversary in character, it is not binding." See also Commissioner of Internal Revenue v. Childs' Estate, 3 Cir., 147 F. 2d 368; Daine v. Commissioner, 2 Cir., 168 F.2d 449, 4 A.L.R.2d 248; and First-Mechanics National Bank of Trenton v. Commissioner, 3 Cir., 117 F.2d 127, 132 A.L.R. 1459.

■ The only real purpose for the suit in the Circuit Court of Montgomery County, Alabama, was to obtain from that court an advisory opinion whereby Marion Oates Leiter could use the estate of William C. Oates, her father, as a means of effectuating a Federal estate tax saving on her inheritance. Even though such decision of the State court is binding between the parties thereto in a settlement of their legal rights between themselves, the estate tax consequences of such court proceedings are left exclu-

sively to the Federal courts in a case such as this one.

In connection with the third and last issue now presented, which issue concerns the question of whether or not Georgia S. Oates Gossler inherited the property in question under the provisions of the will of William C. Oates,[3] and the contention of this plaintiff that Georgia S. Oates Gossler renounced her inheritance under the will and that the divorce decree between William C. Oates and Georgia S. Oates (Gossler), which decree became effective prior to the death of William C. Oates, operated as a revocation of the will, and that because of that and because of the fact that there was no provision in the will for the child of William C. Oates, and that Marion Oates Leiter as such child took as though William C. Oates had died intestate, this Court specifically finds that there was no renunciation by Georgia S. Oates Gossler, the divorce did not revoke or render ineffective the devise to Georgia S. Oates Gossler, and the birth of Marion Oates (Leiter) after the execution of the will of William C. Oates, did not constitute a revocation of said will. The notation made by Georgia S. Oates Gossler on the non-probated copy of the will on or about March 13, 1949, is ineffective insofar as it operates as a renunciation under the will. Viewing it most favorably to the plaintiff, if it was intended as a renunciation, it was not made within a reasonable time. See Brown v. Routzahn, 6 Cir., 1933, 63 F.2d 914. Even if it could be said to be within a reasonable time (it was more than eleven years after the will of William C. Oates had been probated), it had no effect, since Georgia S. Oates Gossler intermingled the property with her own, kept sole control of it for many years, kept no separate books, and, in all respects, acted as the owner up until the date of her death in 1953. See Camp v. Coleman, 36 Ala. 163. Plaintiff's evidence utterly and completely fails to overcome the presumption that Georgia S. Oates Gossler accepted under the will of William C. Oates; it also fails on the question of whether or not she effectively renounced her inheritance.

The evidence is without dispute that Georgia S. Oates (Gossler) and William C. Oates were divorced, and that Georgia S. Oates had married Gossler prior to the death of William C. Oates. However, such facts did not revoke the will insofar as it devised the property in question to Georgia S. Oates Gossler. See Parker v. Foreman, 252 Ala. 77, 39 So.2d 574, 9 A.L.R.2d 505; also 47 Am.Jur. § 535.

Likewise, the subsequent birth of Marion Oates (Leiter) did not constitute a revocation of the will. The will of William C. Oates was clear and unambiguous. He had ample time to revoke or alter the terms of his will. There is no evidence that he desired or intended to make such a revocation or alteration.[4] See Thomas v. Reynolds, 234 Ala. 212, 174 So. 753, 757,—which case is on all

3. "Sixth: To my beloved wife, Georgia Saffold Oates, I give, devise and bequeath all property, and all interest in property, real, personal and mixed, of which I may die seized and possessed, or to which I may be entitled at the time of my decease, not otherwise hereinbefore disposed of, subject, however, to the trust conditions as to certain property hereinbefore mentioned, and subject to the further condition that my said wife shall not have the right for ten years after my death to sell, mortgage or dispose of any of the property herein devised and bequeathed to her, except with the written consent of the trustees herein named, or either of them in case of the death or resignation of the other, but may use and dispose of all the income and profits therefrom as she may desire.

"Seventh: Having perfect trust and confidence that my wife will properly provide and care for any child or children that may be born unto us after the making of this will, I hereby declare and direct that in such an event it is my will that the disposition of my property made herein shall stand, and that such child or children shall not inherit any portion of my estate in his or her own right."

4. Item Seventh, previously quoted in footnote 3 to this opinion, indicates otherwise.

fours with this particular phase of this case—wherein the court said:

"It will be observed that the statute does not say if no provision is made for such after-born child, but does say no provision is made for such contingency; for its application is dependent upon the fact of the failure of the will to provide for such 'contingency,' and the statute does not provide specifically for such after-born child. Thus the case is not within the provisions of the statute as construed by courts of last resort in this and other jurisdictions."

Plaintiff's arguments concerning the legal effect of the divorce and the legal effect of the after-born child, are inapplicable in this case even though, in all probability, such could possibly have been successful arguments had they been advanced by Marion Oates (Leiter) at the time Georgia S. Oates Gossler sought to probate the will of William C. Oates, or within a reasonable time thereafter.

■ For the foregoing reasons, this Court concludes that Georgia S. Oates Gossler inherited the estate of William C. Oates under the will of William C. Oates that was admitted to probate in the Probate Court of Montgomery County, Alabama, on February 23, 1938; that she did not renounce that inheritance, that the divorce decree between Georgia S. Oates (Gossler) and William C. Oates, and the birth of Marion Oates (Leiter) after the execution of the will of William C. Oates, did not operate to defeat the inheritance of Georgia S. Oates Gossler under said will. This Court further concludes that the property in question is properly includable in the estate of Georgia S. Oates Gossler for Federal estate tax purposes. The parties are therefore Directed to prepare their cases upon the remaining issue, which issue concerns the value of certain of the properties taken by Georgia S. Oates Gossler under the will of William C. Oates.